1
2
3
4
5          IN THE UNITED STATES DISTRICT COURT

6        FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    ROSEANNE SAKAMOTO,                           No. C 05-4019 SI

9              Plaintiff,                 **ORDER RE: PARTIES' CROSS-
                                          MOTIONS FOR SUMMARY
10       v.                               JUDGMENT;  DENYING PLAINTIFF'S
                                          MOTION FOR LEAVE TO AMEND
11   UNITED STATES ENVIRONMENTAL          COMPLAINT**
     PROTECTION AGENCY,
12
             Defendant.
13   _____/

14
          On June 9, 2006, the Court heard oral argument on the parties' cross-motions for summary
15
     judgment.  After careful consideration of the parties' papers and arguments, the Court enters the
16
     following order.
17

18                              **BACKGROUND**
19
          Plaintiff filed this lawsuit pursuant to the Freedom of Information Act, seeking information
20
     responsive to five requests she submitted to the U.S. Environmental Protection Agency dated September
21
     3, 2004, January 21, 2005, two dated July 20, 2005, and September 30, 2005.  Defendant contends that
22
     it has produced all non-exempt, responsive documents.  Currently pending before the Court are the
23
     parties' cross-motions for summary judgment, and plaintiff's motion to amend the complaint to add a
24
     claim concerning an April 24, 2006 FOIA request.  Plaintiff's motion to amend the complaint was filed
25
     on May 26, 2006, after the summary judgment motions were fully briefed.
26
27
28

**United States District Court**
For the Northern District of California

**LEGAL STANDARD**

Summary adjudication is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *See T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the non-moving party. *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). The evidence presented by the parties must be admissible. *See* Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

It is generally recognized that summary judgment is a proper avenue for resolving a FOIA claim. *See Nat'l Wildlife Fed'n v. U.S. Forest Service*, 861 F.2d 114 (9th Cir. 1988). The government agency bears the ultimate burden of proving that a particular document falls within one of the nine statutory exceptions to the disclosure requirement. *See Dobronski v. FCC*, 17 F.3d 275, 277 (9th Cir. 1994). The government may submit affidavits to satisfy their burden, but "the government 'may not rely upon conclusory and generalized allegations of exemptions.'" *Kamman v. IRS*, 56 F.3d 46, 48 (9th Cir. 1995) (quoting *Church of Scientology v. U.S. Dep't of the Army*, 611 F.2d 738, 742) (9th Cir. 1980). The government's "affidavits must contain 'reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption.'" *Id.* (quoting *Lewis v. IRS*, 823 F.2d 375, 378 (9th Cir. 1987).

1

**DISCUSSION**

2     As an initial matter the Court notes that plaintiff's papers in support of the motion for summary

3 judgment and in opposition to defendant's motion were filed in a fragmented, confusing manner that

4 does not comply with the Civil Local Rules or the Federal Rules of Civil Procedure.  For example,

5 plaintiff's opposition to defendant's motion for summary judgment consists of (1) a "Statement of

6 Genuine Issues in Opposition to Motion for Summary Judgment" which briefly addresses each of the

7 FOIA requests, contains a two paragraph "argument" section, and contains a "table" with citations to

8 defendant's motion in the left hand column and plaintiff's responses in the right hand column; plaintiff's

9 responses in the table cite other declarations or pleadings that plaintiff has filed;[1] (2) the Declaration of

10 Roseanne Sakamoto, which largely contains legal arguments; (3) "Plaintiff's Reply to Defendant's

11 Motion for Summary Judgment" filed May 17, 2006; and (4) "Plaintiff's Continuing Declaration and

12 Response to Defendant's May 19, 2006 Reply to Opposition Re: Motion for Summary Judgment," along

13 with exhibits.[2]

14     Plaintiff's multiple filings, which all contain numerous cross-references to other documents filed

15 by plaintiff, has needlessly complicated the Court's review in this matter.  The Court is cognizant of

16 plaintiff's *pro se* status, and has shown plaintiff considerable leniency with respect to plaintiff's repeated

17 failures to comply with the Federal Rules of Civil Procedure and the Civil Local Rules in both this case

18 and the related employment discrimination action, *Sakamoto v. Johnson*, C 03-5499 SI.  However,

19 plaintiff is again reminded of the importance of complying with the applicable rules.

20

21 **1.**     **September 3, 2004 FOIA Request**

22     By letter dated September 9, 2002, plaintiff submitted to defendant's Region 9 FOIA Office a

23

24     [1] For example, Entry No. 6 in the table states, under the heading "Moving Party's Alleged
Uncontroverted Facts," "6.   DMSJ 4:7-21.  The July 20, 2005 request . . . ."  Under the heading
25 "Response in Opposition," the table states "Disputed.  Defendant provides a glomar response stating
that factual information is intertwined with the deliberative process.  Please see plaintiff's declaration
26 ¶¶ 21-23."  This entry is typical of the entries contained in the table.

27     [2] Plaintiff submitted the last document to the Court on the day of the hearing, June 2, 2006.  In
light of the fact that this document resolves at least one issue related to the September 30, 2005 FOIA
28 request, the Court will accept this untimely document for filing.

United States District Court

For the Northern District of California

request for 26 categories of documents.  *See* Diamond Decl. Ex. A.  By letter dated October 28, 2002, the Deputy Regional Administrator for Region 9 issued a response granting in part and denying in part plaintiff's request.  *Id.* at Ex. B.  By letter dated November 7, 2002, defendant completed the agency's response to plaintiff's FOIA request.  *Id.* at Ex. C.

On December 8, 2003, plaintiff filed a complaint against the EPA in this Court alleging, *inter alia*, that the EPA violated the FOIA by improperly withholding documents in response to the September 9, 2002 request, *Sakamoto v. Johnson*, C 03-5499 SI.  By order filed August 2, 2004, this Court dismissed plaintiff's FOIA claim without leave to amend, holding plaintiff had failed to exhaust her administrative remedies.  *Id.* at Ex. E at 2-3.

By letter dated September 3, 2004, plaintiff submitted a FOIA request to the EPA Headquarters seeking a *Vaughn* index for the information withheld in response to plaintiff's September 9, 2002 FOIA request.  *Id.* at Ex. F.  According to defendant, the Headquarters FOIA Office forwarded the request to the Region 9 FOIA Office, and it was pending at the time that the instant case was filed.  *Id.* ¶ 8. Defendant states that because this Court dismissed plaintiff's September 9, 2002 FOIA claim in Case No. 03-5499 SI, the EPA never prepared a *Vaughn* index for that request.  *Id.*

In this action, plaintiff seeks information responsive to the September 3, 2004 request: namely, the *Vaughn* index for the September 9, 2002 request.  Plaintiff asserts that she is aware that defendant withheld documents responsive to her September 9, 2002 request, and that she is seeking a *Vaughn* index to learn "what other documents were withheld without her knowledge."  Pl's May 17, 2006 Reply at 2.

The Court concludes that defendant is entitled to summary judgment on this claim.  Defendant does not have any documents responsive to plaintiff's September 3, 2004 request because it never created a *Vaughn* index related to the September 9, 2002 request.   Notwithstanding plaintiff's desire for such information, FOIA does not require an agency to create records in response to a request.  *See Zemansky v. U.S. EPA*, 767 F.2d 569, 574 (9th Cir. 1985).  Initial agency responses to FOIA requests are not required to contain a *Vaughn* index.  *See Schwarz v. U.S. Dep't of Treasury*, 131 F. Supp. 2d 142, 147 (D.D.C. 2000) ("Plaintiff is advised that there is no requirement that an agency provide a . . . . '*Vaughn*' index on an initial request for documents.").  Accordingly the Court GRANTS summary

4

1    judgment in favor of defendant on this claim.

2

3    **2.      January 21, 2005 Request, as amended/July 20, 2005 "Appeal"**

4         **A.      January 21, 2005 Request, As Amended**

5         By letter dated January 21, 2005, plaintiff submitted a FOIA request to EPA's Headquarters

6    FOIA Office for 5 categories of documents.  *See* Diamond Decl. Ex. G.  The Headquarters Office

7    forwarded the request to the Region 9 FOIA Office, where it was logged into the tracking system and

8    assigned EPA tracking number 09-RIN-00174-05.  *Id.* at ¶ 9.  After Region 9 and plaintiff negotiated

9    the scope and estimated fees for this request, plaintiff submitted an amended request by letter dated

10   April 4, 2005 ("January 21, 2005 request as amended"), that sought only one of the five originally

11   requested categories. *Id.* at Ex. H.  The amended request sought, "Laboratory Audit Reports from 2000-

12   2005 on EMAX Laboratory, Torrence, California, completed by Region 9, U.S. EPA, Quality Assurance

13   Office." *Id.*

14        Defendant located one responsive document, and after initially withholding it pending a

15   confidentiality determination, produced the document in full to plaintiff.  *Id.* at ¶¶ 10-12.  In a letter

16   dated July 12, 2005, defendant informed plaintiff that it would be refunding $384 to plaintiff because

17   the cost to process responsive documents was less than the estimated amount.  *Id.* at ¶ 12, Ex. J.

18        In a letter dated July 20, 2005, titled "Re: APPEAL of Freedom of Information Request NO. 9-

19   RIN-174-05," plaintiff stated that she wished to appeal "subject Freedom of Information Act (FOIA)."

20   *Id.* at Ex. K.  Plaintiff's letter did not specify what she was appealing.  Plaintiff's July 20, 2005 "appeal"

21   also stated that she had not been reimbursed $384.00.  *Id.*  Plaintiff's "appeal" also requested documents

22   related to category five of her original January 21, 2005 request, namely a "copy of report and/or all

23   transmittals (including electronic) from EPA Las Vegas, Technology Support Center to Region 9, QA

24   Office on EMAX Laboratory's ability to meet contract requirements from 2000-2005." *Id.*[3]  Plaintiff

25   stated that because the Agency had earlier estimated the cost of producing documents responsive to

26   category five as $199.00, she wanted the EPA to deduct $199.00 from the $384.00 due her.  *Id.* On July

27   _____

28        [3] This request is discussed *infra* in subsection B.

*United States District Court*
For the Northern District of California

27, 2005, EPA refunded $384.00 to plaintiff by electronic funds transfer. *Id.* at ¶ 13. By letter dated August 14, 2005, plaintiff remitted to EPA a personal check in the amount of $199.00 for the balance owed in processing the July 20, 2005 request. *Id.[4]*

According to defendant, in response to this lawsuit, defendant conducted a supplemental search for documents responsive to the January 21, 2005 request, as amended. *Id.* at ¶ 14. Defendant located one additional document, EPA-214, which consists of a one-page e-mail from a contractor hired by EPA to an EPA staff person transmitting a 13-page attachment. The attachment consists of an audit prepared by a separate EPA contractor that evaluated EMAX's performance under an EPA contract to provide laboratory services. *Id.* at ¶ 15. Defendant produced the document in redacted form; defendant redacted two sentences from the e-mail, and withheld the attachment in full. *Id.* The *Vaughn* index for EPA-214 states:

> The withheld information reflects the internal deliberations among EPA staff and an EPA contractor, LMES. The withheld information is predecisional because the contractor, LMES, is providing the EPA staff with the results of its audit of EMAX's laboratory results. The results of the audit will be used [to] inform future Agency decision-making related to EMAX's compliance with scientific protocols. The contractor who authored the report lacked decision-making authority. Furthermore, the withheld information does not reflect a final Agency decision or policy. Release of the withheld information would have a chilling effect on Agency decision-making process and cause public confusion regarding EPA's decision related to EMAX's performance of its contractual duties.

*Vaughn* Index at 80.

EPA contends that the withheld information falls under Exemption 5 because it is both deliberative and predecisional.[5] Exemption 5 shields from mandatory disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency

---

[4] It is unclear to the Court whether defendant owes plaintiff $199.00. The parties are directed to complete a meet and confer on this specific issue within 10 calendar days of the filing date of this order. If the parties' meet and confer session is successful, the parties shall submit a joint letter so informing the Court within 15 calendar days of the filing date of this order. If the parties are unable to resolve any outstanding dispute concerning the $199.00, the parties shall file letter briefs of <u>no more than 3 pages</u> each to the Court within 15 calendar days of the filing date of this order. The matter shall be deemed submitted, and the Court shall issue a separate order regarding the $199.00.

[5] Plaintiff's assertion that defendant provided a "*Glomar* response" to this or other requests is incorrect. A "*Glomar* response" refers to the CIA's refusal to confirm or deny the existence of records. *See Phillippi v. CIA*, 546 F.2d 1009, 1111 (D.C. Cir. 1976) (upholding CIA refusal to confirm or deny existence of records of CIA connection to activities of ship named the *Hughes Glomar Explorer*).

United States District Court

For the Northern District of California

in litigation with the agency." 5 U.S.C. § 552(b)(5).  The Supreme Court has clarified that Exemption 5 exempts "those documents, and only those documents that are normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).  Because an agency may invoke the deliberative process privilege to protect records from discovery in civil litigation, an agency may invoke this privilege to exempt records from release under Exemption 5.  *See United States v. Weber Aircraft Corp.*, 465 U.S. 792, 800 (1984).

In order to invoke Exemption 5, an agency must first show that the records in question are "inter-agency or intra-agency memorandums or letters."  *United States Dep't of Interior v. Klamath Water Users Protective Assoc.*, 532 U.S. 1, 9 (2001).  In *Klamath Water Users Protective Association*, the Supreme Court notes in dicta that several Courts of Appeals (D.C., First, and Second Circuits) have held that communications between an agency and its consultants constitute "intra-agency" communications if the consultant "does not represent an interest of its own, or the interest of any other client, when it advises the agency that hires it."  *Id* at 11.  Defendant states that EPA-214, and many of the other documents at issue in plaintiff's FOIA requests, were authored by outside consultants hired to perform audits to be used by EPA to inform the agency's decision-making processes.

The Court finds the reasoning of these cases persuasive, and accordingly concludes that the documents authored by the EPA consultants should be considered intra-agency documents because the consultants were providing information and advice to the EPA on compliance issues.  *See Hoover v. U.S. Dep't of Interior*, 611 F.3d 1132, 1137-38 (5th Cir. 1980) (holding appraisal report prepared by outside expert was "intra-agency memorandum" because, *inter alia*, "the government may have a special need for the opinions and recommendations of temporary consultants") (citations and quotations omitted); *see also Lead Indus. Ass'n, Inc. v. Occupational Health & Safety Admin.*, 610 F.2d 70, 83 (2d Cir. 1979); *Soucie v. David*, 448 F.2d 1067, 1078 n.44 (D.C. Cir. 1971).

Documents must be both "predecisional" and "deliberative" to be exempt under Exemption 5.  A "predecisional" document is one "prepared in order to assist an agency decisionmaker in arriving at his decision," *Renegotiation Board v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975), and may include "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency,"

7

*Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). A predecisional document is a part of the "deliberative process," if "the disclosure of [the] materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Dudman Communications Corp. v. U.S. Dep't of the Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987).

The Court concludes that defendant has properly invoked Exemption 5 for the withheld portions of EPA-214. EPA-214 is predecisional because the consultant is providing EPA staff with the audit of EMAX to be used to inform ongoing agency decisionmaking related to EMAX's compliance with scientific protocols. *See* Diamond Decl. ¶ 16. According to defendant, the contractor who authored the report lacked decisionmaking authority, and the withheld information does not reflect a final agency decision or policy. *Id.* Similarly, EPA-214 is deliberative because it consists of internal analyses, opinions and recommendations that contributed to EPA's final decisions.

Plaintiff asserts that Exemption 5 does not cover factual findings, and that defendant should be required to produce the purely factual information contained in EPA-214. However, the Ninth Circuit has held that disclosure of factual information is not required when that factual information is directly tied to the deliberative process. "Hence, even if the content of a document is factual, if disclosure of the document would expose 'the decision-making process itself' to public scrutiny by revealing the agency's 'evaluation and analysis of the multitudinous facts,' the document would nonetheless be exempt from disclosure." *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1118 (9th Cir. 1988) (*quoting Montrose Chem. Corp. of California v. Train*, 491 F.2d 63, 71 (D.C. Cir. 1974)).

### B.       Additional Documents Requested in July 20, 2005 "Appeal"

According to defendant, plaintiff's labeling of this letter as an "appeal" caused delay in EPA processing plaintiff's request for a "copy of report and/or all transmittals (including electronic) from EPA Las Vegas, Technology Support Center to Region 9, QA Office on EMAX Laboratory's ability to meet contract requirements from 2000-2005." *See* Diamond Decl. at ¶ 17. Defendant located six documents responsive to this request, EPA-208 through EPA-213. Defendant produced in part EPA 210, 212 and 213, and withheld in full EPA-208, 209 and 211. Defendant invoked Exemption 5 for the

withheld portions of all the documents, and also invoked Exemption 6 to withhold the personal e-mail address of an EPA employee contained in EPA-210. Plaintiff asserts that Exemption 5 does not apply to these documents, but does not oppose the redaction of the personal e-mail address in EPA-210.

As described in the *Vaughn* index, these documents are similar to EPA-214 in that they all concern an evaluation of whether EMAX is complying with requirements contained in EMAX's contract with EPA. Specifically, the documents are (1) a report prepared by LMES (the contractor) for EPA on EMAX's compliance (EPA-208); (2) draft reports prepared by LMES for EPA on EMAX's compliance (EPA-209, 211); and (3) memorandums from EPA Technology Support Center employee(s) to EPA Region 9 Quality Assurance Office employee(s) regarding LMES's evaluation, and attaching LMES's report and the e-mail/letter/or memoranda transmitting the report from LMES to the TSC employee (EPA-210, 212 and 213).

The Court concludes that the withheld portions of these documents are both deliberative and predecisional under Exemption 5 of the FOIA. The withheld information is deliberative because it consists of discussions among EPA staff and the EPA contractor related to EMAX's contractual compliance, and it is predecisional because the documents are related to the evaluation of EMAX's contractual compliance that was on-going at the time the documents were drafted.

Accordingly, the Court GRANTS summary judgment in favor of defendant on this claim, except to the extent that there remains a dispute concerning plaintiff's payment of $199.00. As set forth in footnote 4, *supra*, the Court shall resolve that issue by separate order, unless the parties are able to resolve that dispute through the meet and confer process.

**4.      Second July 20, 2005 Request**

By letter dated July 20, 2005, plaintiff sent a FOIA request to EPA's Headquarters FOIA Office for "discrimination complaints filed with Region 9, US EPA from 1994 to present and any documentation maintained at the Region 9, US EPA from 1994 to present and any document maintained at the Region 9 and at HQ of what has been done or is being done to address these complaints from Region 9." Higginbotham Decl, Ex. L. This request was for the same information at issue in plaintiff's September 9, 2002 FOIA request discussed *supra* and in the Diamond Declaration. *See* Diamond Decl.

United States District Court

For the Northern District of California

Ex. A ¶ 13.  Plaintiff's July 20, 2005 letter referenced plaintiff's September 9, 2002 FOIA request and its tracking number, and according to defendant, the FOIA office originally treated this letter as a status check on the June 2, 2004 administrative appeal associated with plaintiff's September 9, 2002 request. *See* Higginbotham Decl. at ¶ 6.

According to the Higginbotham declaration, EPA's Office of Civil Rights ("OCR") identified 26 discrimination complaints filed in EPA's Region 9 office between fiscal years 1994 to 2005 as being responsive to plaintiff's request.  *Id.* at ¶ 7.  Mr. Bassie McCain, an EEO specialist in OCR, searched for and located 18 of the 26 complaint case files; the other 8 files had been destroyed pursuant to EPA Records Schedule 541 prior to plaintiff's FOIA request.  *Id.* at ¶¶ 7, 9; *see also id.* at Ex. M (copy of EPA Records Schedule 541).  These complaint files were compiled by the EPA as part of the internal investigatory or adjudicatory proceedings associated with the EEO process for complaints of discrimination in accordance with Title VII of the Civil Rights Act, the Rehabilitation Act, and/or the Age Discrimination Employment Act.  *Id.* at ¶ 7.

Of the 18 located complaint files, three are associated with plaintiff.  *Id.* at ¶ 8.  Defendant states that it did not include these files in its response because information contained in these files has either been previously disclosed to plaintiff or has been provided to the EPA by plaintiff in connection with other litigation.  *Id.*  Of the 15 complaint files not associated with plaintiff, 5 remain open and 10 are closed.  *Id.*

OCR prepared a chart describing each Region 9 discrimination complaint filed since 1994.  *Id.* at ¶ 10.  For each case, the chart lists the docket number, the issue(s) involved, the basis for the alleged discrimination, the current status and the date of the last action.  *Id.*  Defendant provided plaintiff with a copy of the chart.  *Id.*; *see also* Pl's Statement of Genuine Issues at Ex. 9 (copy of chart).[6]

According to defendant, each complaint case file contains similar types of records and is organized along a standard format: the complaint, correspondence between the complainant and OCR employees, the EEO Counselor's Report, correspondence between the complainant and the EEO

---

[6]  Plaintiff complains that the chart contains abbreviations such as "FAA" and "Fad" without explanation; the Court agrees that the usefulness of the chart is limited due to the failure to explain these abbreviations.  Within 7 days of the filing date of this Order, defendant shall provide to plaintiff a supplemental chart with explanations of all abbreviations.

United States District Court

For the Northern District of California

counselor, and the Report of Investigation prepared by an OCR investigator working under contract. *Id.* at ¶ 11.  A file may also contain copies of relevant EPA and Office of Personnel Management ("OPM") standard forms; collective bargaining agreements; and EPA and OPM policies, guidance documents, and manual or other reference material that EPA considers to be in the public domain.  *Id.* In some cases, the complaint file also includes correspondence between EPA and the EEOC, and EPA and a federal court.  *Id.*

EPA reviewed each file and identified all standard form letters that OCR uses to communicate with complainants and a complete set of reference materials.  *Id.*  Defendant produced copies of the form letters and reference materials to plaintiff.  *Id.*  Defendant withheld all remaining information from the 15 complaint case files on privacy grounds, invoking Exemption 7(c), and alternatively Exemption 6. The case files are listed on the *Vaughn* index as Documents EPA-222 to EPA-236.

Exemption 7 shields from public disclosure information about individuals where: (1) the "information [was] compiled for law enforcement purposes," and (2) the disclosure of the information "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  Exemption 7's protection of privacy interests is broader than that of Exemption 6. "Where law-enforcement records are sought (Exemption 7(C)), the threatened invasion of privacy need not be as likely as where personnel, medical or similar files are at issue."  *Hunt v. FBI*, 972 F.2d 286, 288 (9th Cir. 1992).

### A.      Records Compiled for Law Enforcement Purposes

The first question in determining the applicability of Exemption 7(C) is whether "the withheld record was compiled for law enforcement purposes."  *See Rosenfeld v. United States Dep't. of Justice*, 57 F.3d 803, 808 (9th Cir.1995). "An agency which has a clear law enforcement mandate, such as the FBI, need only establish a 'rational nexus' between enforcement of a federal law and the document for which an exemption is claimed."  *See Church of Scientology*, 611 F.2d at 748. Where, however, an agency "has a 'mixed' function, encompassing both administrative and law enforcement functions, [it] must demonstrate that it had a purpose falling within its sphere of enforcement authority in compiling the particular document."  *See id.* (citing *Rural Housing Alliance v. United States Dept. of Agriculture*,

498 F.2d 73, 80 (D.C. Cir. 1974)). "[I]f the investigation is for a possible violation of law, then the inquiry is for law enforcement purposes, as distinct from customary surveillance of the performance of duties by government employees." *Jefferson v. U.S. Dep't of Justice, Office of Professional Responsibility*, 284 F.3d 172, 177 (D.C. Cir. 2002); *see also Davin v. FBI*, 60 F.3d 1043, 1054 n.3 (3d Cir. 1995) (noting that agency investigations of civil rights violations could be "for law enforcement purposes").

Defendant has submitted the Declaration of Karen Higginbotham, the Director of the EPA's OCR. That declaration states that EPA's OCR is a program office within the Office of the Administrator, and "provides leadership, direction, and guidance in carrying out the Agency's civil rights initiatives and equal employment programs." Higginbotham Decl. ¶ 3. Ms. Higginbotham states, *inter alia*,

> OCR is primarily responsible for ensuring the Agency's enforcement of federal non-discrimination laws – such as Titles VI and VII of the Civil Rights Act of 1964; Section 504 of the Rehabilitation Act of 1973; Section 13 of the Federal Pollution Control Act Amendments of 1972; Title VII of the Civil Rights Act of 1968; Title IX of the Education Act Amendments of 1972; and the Age Discrimination Act of 1975 – in all of the Agency's internal and external programs and policies.

*Id.* at ¶ 3. The complaint files at issue "were compiled by the Agency as part of the internal investigatory or adjudicatory proceedings associated with the EEO process for complaints of discrimination in accordance Title VII of the Civil Rights Act, the Rehabilitation Act, and/or the Age Discrimination Employment Act." *Id.* at ¶ 7. Based upon representations in the Higginbotham Declaration, the Court concludes that defendant has met its burden to show that the discrimination complaint files were "compiled for law enforcement purposes."

**B.      Privacy Concerns and Public Interest**

The Court further finds that disclosure of the information contained in the complaint files "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). According to the Higginbotham Declaration, a typical complaint file contains the complaint, correspondence between the complainant and OCR staff, correspondence between the complainant and the EEO counselor, the EEO counselor's report, the Report of Investigation ("ROI"),

1    and the EPA Headquarters Merit Promotion Supplemental Plan. *Id.* at ¶ 13.  These materials include

2    the complainant's name, Social Security Number, and information about the complainant's age, sex,

3    race, and national origin, as well as information identifying witnesses, investigators, and the manager

4    accused of discrimination and descriptions of the allegedly discriminatory acts. *Id.* at ¶ 14.

5         The EEO Counselor's Report, contained in all complaint files, describes all allegations of

6    discrimination raised by the complainant, any advice that the counselor provided the complainant and

7    agency officials with whom the counselor met in attempts to informally resolve the complaint, and any

8    documentation collected by the counselor or presented to the counselor by the complainant in relation

9    to the complaint. *Id.* at ¶ 15.  All complaint files contain e-mails and other correspondence sent among

10   the EEO Counselor and employees in OCR. *Id.* at ¶ 16.  According to the Higginbotham Declaration,

11   these e-mails directly and indirectly reveal the name of the complainants and the identities of third

12   parties directly or indirectly associated with EPA's investigation into the alleged discriminatory

13   activities. *Id.*

14        The ROI included in the complaint files is prepared by a contractor who operates under a

15   confidentiality agreement. *Id.* at ¶ 17.  The ROI is prepared to assist OCR in its deliberations about

16   whether to issue findings of discrimination. *Id.*  The ROI for EPA-236, a representative file, contains

17   duplicate copies of the complaint and relevant standard forms and correspondence, an index, memoranda

18   from the investigator, copies or descriptions of evidence gathered or created as part of the investigation,

19   and a summary of the investigation's findings. *Id.* at ¶ 18.  According to defendant, the evidence

20   includes items such as organizational charts for the complainant's office; the names, dates of birth or

21   other personal information for other employees; affidavits from EPA employees and the complainant;

22   documents pertaining to a vacancy announcement; the job application of the complainant and the

23   successful applicant; and documents pertaining to the selection process for the vacancy announcement.

24   *Id.*; *see also id.* at ¶¶ 19-25 (providing further description of contents of ROI).

25        The Court must balance the employees' privacy interests against the public interest in the

26   disclosure of the information. *See United States Dep't of Defense v. Fed. Labor Relations Auth.*, 510

27   U.S. 487, 495-96 (1994).  Plaintiff bears the burden of demonstrating the public interest in the

28   information. *See Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 391-92 nn. 8 & 13 (D.C. Cir. 1987).

"Where the privacy concerns addressed by Exemption 7(C) are present, the exemption requires the persons requesting the information to establish a sufficient reason for the disclosure." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004). The person requesting the information must make the following showing:

> First, the citizen must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake. Second, the citizen must show the information is likely to advance that interest. Otherwise, the invasion of privacy is unwarranted.

*Id.*

Plaintiff contends that the only information from the complaint files that should be withheld is the names of complainants and witnesses. *See* Sakamoto Decl. ¶ 14. Plaintiff contends that the remainder of the information contained in the complaint files should be provided because the public has an interest in knowing whether the EPA is complying with employment discrimination laws. In particular, plaintiff asserts that she needs to know the identities of these managers because they may be the same managers of whom she has complained in her related employment discrimination case, *Sakamoto v. Johnson*, C 03-5499 SI. Plaintiff also argues that because the EPA administers an Environmental Justice program, the public "has a right to know if an individual in the decision making process was charged with discrimination, as this bias may also be reflected in decisions affecting the EJ program." Sakamoto Decl. ¶ 11.

"[W]here there is a privacy interest protected by Exemption 7(C) and the public interest being asserted is to show that responsible officials acted negligently or otherwise improperly in the performance of their duties, the requester must establish more than a bare suspicion in order to obtain disclosure. Rather, the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Favish*, 541 U.S. at 174. Here, plaintiff has not submitted any specific evidence that would warrant a belief that the EPA has violated the law with respect to any of the 15 complaints. Plaintiff entirely dismisses the privacy concerns of the managers accused of discrimination; however, the Ninth Circuit has held that individuals investigated for alleged wrongdoing have significant privacy interests that should be considered when deciding whether disclosure is warranted. *See Hunt*, 972 F.2d at 288 ("A government employee

United States District Court

For the Northern District of California

generally has a privacy interest in any file that reports on an investigation that could lead to the employee's discipline or censure.").

The only specific evidence that plaintiff submits indicating wrongdoing by the EPA is evidence from the related employment discrimination suit, *Sakamoto v. Johnson*, C 03-5499 SI; all of that evidence, which is disputed by the EPA in that case, concerns plaintiff and does not involve claims of discrimination by other employees at the EPA. Moreover, as the Second Circuit has noted, "[i]n this weighing process [under FOIA], it must be remembered that it is the interest of the general public, and not that of the private litigant, that must be considered." *Brown v FBI*, 658 F.2d 71, 75 (2d Cir. 1981). Here, plaintiff expressly acknowledges that she wants the discrimination complaint files to use as possible evidence in her employment discrimination case.[7]  This not a significant public interest warranting disclosure of private information.

Because the Court concludes that the information was properly withheld under Exemption 7(c), the Court does not reach the parties' arguments regarding the applicability of Exemption 6. Accordingly, the Court GRANTS summary judgment in favor of defendant on plaintiff's July 20, 2005 FOIA claim, except to the extent that defendant is ordered to provide a supplemental chart to plaintiff as directed in footnote 6, *supra*.

**5.     September 30, 2005 Request**

By letter dated September 30, 2005, plaintiff sought eighteen categories of documents. *See* Diamond Decl. Ex. L. Categories 1-4 and 8-18 were directed to Region 9 for response, while Categories 5-7 were directed to the Office of Civil Rights. Responsive documents were located for fourteen of the categories; according to defendant, plaintiff sought records that never existed for Categories 7 and 8, and no responsive documents were located for Categories 3 and 14.

Plaintiff's summary judgment papers only specifically address Categories 3, 6, 10, 13 and 14.

---

[7]  Indeed, plaintiff repeatedly sought to stay or postpone proceedings in *Sakamoto v. Johnson*, C 03-5499 SI, on the ground that this FOIA action needed to be resolved first so plaintiff could obtain the FOIA documents and use them in the employment case. *See, e.g.*, Docket Nos. 203 & 207 in 03-5499 SI (orders denying plaintiff's requests to adjudicate 05-4019 SI before proceeding with 03-5499 SI; rejecting plaintiff's contention that she would be prejudiced in 03-5499 SI because she needed evidence from 05-4019 SI to develop case).

Accordingly, the Court assumes that plaintiff does not contend that defendant has violated its obligations under the FOIA with respect to any of the other categories in the September 30, 2005 request.

### A.   Category 3

Plaintiff's September 30, 2005 letter stated, "[e]xcluding attached example, please provide copies of similar memos issued to EPA staff who have filed legal claims against the Agency from 1994 through present." *Id.* The example attached by plaintiff is a September 30, 2004 memorandum from plaintiff's direct supervisor, Vance S. Fong, to plaintiff, with a subject line, "Rules on the Use of Official Time, Space and Equipment." *Id.* The memorandum informs plaintiff that she is allowed to use a reasonable amount of official time to attend mandatory appearances, that she must obtain Mr. Fong's permission prior to using official time, and that she is not allowed to use official time, official space or EPA equipment to prepare her case. *Id.*

According to defendant, the EPA concluded that the Region 9 Human Resources Office was most likely to have documents "similar" to Mr. Fong's memorandum, and accordingly limited the search to that office. Diamond Decl. ¶ 29. Defendant did not locate any responsive documents. *Id.* Plaintiff contends that the EPA should have conducted an Agency-wide search since her request sought "copies of similar memos issued to EPA staff who have filed legal claims *against the Agency . . . .*"

The adequacy of the agency's search is judged by a standard of reasonableness, construing the facts in the light most favorable to the requestor. *See Zemansky*, 767 F.2d at 571. "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Id.* (quotation omitted). Here, the Court concludes that defendant's search was adequate. The EPA reasonably concluded that the Region 9 Human Resources Office was most likely to have documents "similar" to the memorandum from Mr. Fong.

### B.   Category 6

Plaintiff requested the Diversity Action Plans, Affirmative Employment Plans and Minority Employee Effort reports from 1999 to the present for EPA Regions 6 to 10 and EPA Headquarters.

16

United States District Court

For the Northern District of California

According to the Higginbotham declaration, the search located 71 responsive documents.  The EPA released to plaintiff 70 documents in full, and one record, Document EPA-190 in part.[8]  Plaintiff contends that defendant's search for documents was inadequate because numerous plans and reports from 1999 to the present were not produced.

The Court concludes that defendant's search for responsive documents was adequate.  As described in the Higginbotham Declaration, Mr. Mizra Baig, Affirmative Employment Program National Manager, OCR, coordinated the collection of responsive records for each category in OCR and for the five EPA regional offices covered by plaintiff's request (Regions 6 to 10).  *See* Higginbotham Decl. ¶ 30.  The declaration states,

> By e-mail dated November 30, 2005, Mr. Baig contacted the EPA employees in Region[s] 6 to 10 who were responsible for maintaining the records responsive to the requests contained in Categories 5, 6, and 7 [of plaintiff's September 30, 2005 letter].  Mr. Baig's e-mail informed them of Plaintiff's FOIA request and instructed them to search for and forward to him records responsive to Plaintiff's FOIA request.  Mr. Baig conducted the search for responsive documents in OCR. . . .
>
> The search located seventy-one (71) documents responsive to Plaintiff's FOIA request for records within Category 6. . . .

*Id.* at ¶¶ 30, 32.  Ms. Higginbotham further states that although plaintiff requested documents dated from 1999 to the present, defendant provided plaintiff with copies of Affirmative Employment Plans dated pre-1999 because the AEPs contain statistical information of the kind that plaintiff expressed an interest receiving in her Category 5 request.  *Id.* at ¶ 32 n.2.  Defendant has demonstrated that it "conducted a search reasonably calculated to uncover all relevant documents."  *Zemansky*, 767 F.2d at 571 (quotations omitted).

### C.  Category 10

---

[8]  EPA-190 is a memorandum with an attachment.  The memorandum, from the Director of the Office of Civil Rights, Region 9, transmits the attachment, which is the 1998 Affirmative Employment Program ("AEP") Plan and the 1999 AEP Plan Update, to the Director of OCR.  The memorandum was released in part and the attachment was released in full.  *Id.* at ¶ 33.  Plaintiff does not contend that defendant wrongfully withheld any information from EPA-190.  Instead, plaintiff asserts, "Note also that defendant responded with numerous documents in 2002, that are now being withheld, e.g., Tracking Number 190 . . . ."  Pl's Statement of Genuine Issues at 4.  Plaintiff does not elaborate on this argument or provide any evidence in support of this assertion.  Regardless, to the extent that plaintiff complains about defendant's production regarding EPA-190, it appears that from plaintiff's own account, defendant produced EPA-190 in full in 2002, and accordingly any dispute is moot.

17

United States District Court

For the Northern District of California

Defendant provided plaintiff with a redacted version of Rose Fong's PERFORMS Performance Plan for 2003, the sole document from Category 10 that plaintiff addressed in her papers. Second Diamond Decl. ¶ 4. Plaintiff's June 2, 2006 filing acknowledges receipt of this document, and does not challenge any of the redactions. Accordingly, the Court concludes that this issue is now moot.

### D.     Category 13

Plaintiff sought "copies of requests to earn credit hours from individuals in the QA Office, Region 9 from 1999 through January 2005," "copies of Credit Hour Record for FWS that correspond to the credit hours requested and earned," and copies of "'work to be completed' reports submitted with the credit hour requests." Diamond Decl., Ex. L. The EPA located 119 records responsive to plaintiff's request, and produced 116 of these documents in full to plaintiff.[9] Defendant produced portions of the remaining three documents, EPA-47, EPA-48, and EPA-52. *Id.* at ¶ 65. Plaintiff challenges defendant's withholding as to documents EPA-47 and EPA-48.

Documents EPA-47 and EPA-48 are internal e-mails between plaintiff, who is a QA Office employee, and Mr. Fong, the former QA Office Manager, related to problems that plaintiff was experiencing with her review of a sampling plan. *Id.* at ¶ 66. The *Vaughn* index describes EPA-47 as follows:

> E-mail string containing two e-mails discussing Plaintiff's workload, the time it was taking her to complete her assignments, and about challenges she was encountering in completing one of her assignments resulting in her taking more time in completing the assignment than originally estimated. The originating e-mail is from Vance Fong, who at the time was the Quality Assurance (QA) Office Manager, to Plaintiff, a QA Office employee. The second e-mail was from Plaintiff to Vance Fong.

*Vaughn* Index at 16. The *Vaughn* index description for EPA-48 is virtually identical, except that EPA-48 consists of three emails. *Id.* at 18.

Defendant invoked Exemption 5 to withhold portions of both e-mail strings, arguing that the withheld information is predecisional and deliberative because "the employee [plaintiff] is bringing to

---

[9] These documents are identified as EPA-5 to EPA-8, EPA-10 to EPA-12, EPA-14 to EPA-28, EPA-36 to EPA-38, EPA-42 to EPA-46, EPA-49 to EPA-51, EPA-53 to EPA-60, EPA-62 to EPA-67, EPA-69, EPA-71 to EPA-79, EPA-83 to EPA-85, EPA-91 to EPA-101, and EPA-103 to EPA-109. *See* Diamond Decl. ¶ 65.

United States District Court

For the Northern District of California

the attention of the QA Office Manager the problems she is encountering related to her on-going review of a sampling plan." *Id.*   Defendant contends that "[b]ased on the information provided to the QA Office Manager from the QA Office employee, the QA Office Manager can decide whether he needs to make a decision." *Id.*

The Court concludes that Exemption 5 does not apply to these e-mail strings.   As the Ninth Circuit has noted, "Exemption 5 covers 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Carter v. U.S. Dep't of Commerce*, 307 F.3d 1084, 1089 (9th Cir. 2002) (*quoting Klamath Water Users*, 532 U.S. at 8).   As the Supreme Court noted after examining the legislative history of Exemption 5, "[t]he point, plainly made in the Senate Report, is that the 'frank discussion of legal or policy matters' in writing might be inhibited if the discussion were made public; and that the 'decisions' and 'policies formulated' would be the poorer as a result."   *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975).

Here, pedestrian e-mail exchanges between plaintiff and her supervisor regarding plaintiff's workload do not constitute "deliberations" that are part of a process leading to "governmental decisions and policies."   Under defendant's expansive interpretation, virtually any e-mail exchange between an employee and a supervisor would be subject to Exemption 5 because the supervisor might make a decision based upon information provided by the employee.   However, the courts have repeatedly recognized that "FOIA exemptions are to be narrowly construed."   *FBI v. Abramson*, 456 U.S. 615, 630 (1982).   Moreover, the type of e-mail exchanges described in the *Vaughn* Index are not ones that would normally be protected from disclosure in the civil litigation context.   *See Sears*, 421 U.S. at 149 ("[I]t is reasonable to construe Exemption 5 [of the FOIA] to exempt those documents, and only those documents, normally privileged in the civil discovery context.").

**E.       Category 14**

Plaintiff sought a copy of the procurement request used to purchase a cart that was in plaintiff's work cubicle.   EPA concluded that the Region 9 Facilities Program Office and the Region 9 Contracts Office were the office likely to have responsive records.   Diamond Decl. ¶ 33.   According to defendant,

19

1    staff and managers in these offices searched paper files and an electronic database for procurement files

2    but were unable to locate a copy of the procurement request for the cart.  *Id.*

3          Plaintiff does not contend that defendant's search was not reasonable.  Instead, plaintiff simply

4    asserts that a procurement request "must have been generated," and [s]hould the procurement surface,

5    please provide a copy to plaintiff."  Pl's Statement of Genuine Issues at 13.  The Court finds there is no

6    genuine legal dispute with respect to Category 14, and finds in favor of defendant on this issue.

7          Accordingly, the Court GRANTS defendant's motion for summary judgment on the September

8    30, 2005 FOIA request, except as to Documents EPA-47 and EPA-48.

9

10   **6.      Plaintiff's Motion to Amend Complaint**

11         On May 26, 2006, after the summary judgment motions had been fully briefed and only days

12   before the hearing, plaintiff filed a motion for leave to amend the complaint to add an April 26, 2006

13   FOIA request.  At the June 2, 2006 hearing, the parties represented to the Court that the April 26, 2006

14   FOIA request seeks personnel records for two EPA employees[10]; defendant stated that these two

15   employees are no longer with the EPA and that the EPA was in the process of preparing a response to

16   plaintiff stating that the agency did not have responsive records.

17         The Court hereby DENIES plaintiff's motion to amend the complaint.  The parties' summary

18   judgment motions have been fully briefed and argued, and allowing amendment would unduly prolong

19   these proceedings.  *See Solomon v. North American Life & Cas. Ins. Co.*, 151, F.3d 1132, 1139 (9th Cir.

20   1998) (holding district court did not abuse discretion in denying leave to amend filed on eve of

21   discovery deadline).

22

23                                    **CONCLUSION**

24         For the foregoing reasons and for good cause shown, the Court hereby GRANTS in part and

25   DENIES in part defendant's motion for summary judgment (Docket No. 30), GRANTS in part and

26   DENIES in part plaintiff's motion for summary judgment (Docket No. 27), and DENIES plaintiff's

27   _____

28         [10]  Plaintiff did not provide the Court with a copy of this request.

United States District Court
For the Northern District of California

motion for leave to amend the complaint.  (Docket No. 45).

Defendant shall produce a supplemental chart (as described in footnote 6) and produce unredacted versions of EPA-47 and EPA-48 to plaintiff within 7 calendar days of the filing date of this order.  As set forth *supra*, the Court shall resolve plaintiff's claim concerning the payment of $199.00 by separate order if necessary.

**IT IS SO ORDERED.**


Dated:   July 24, 2006

_____
SUSAN ILLSTON
United States District Judge